JACKSON NATIONAL LIFE LEGAL

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

AUG 02 2013

RECEIVED

July 26, 2013

Jackson National Life Insurance Company          Certified Mail
One Corporate Way                                Return Receipt Requested
Lansing, MI  48951                               7012 1010 0002 9209 1760
NAIC # 65056                                     Cashier # 10137

Re:    Tamrarin Lindenberg, Et Al  V.  Jackson National Life Insurance Company

       Docket # Ct-003084-13

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served July 26, 2013, on your behalf in connection with the
above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Shelby County
    140 Adams Street, Rm 324
    Memphis, Tn  38103

**(CIRCUIT/CHANCERY) COURT OF TENNESSEE**
**140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

## SUMMONS IN CIVIL ACTION

Docket No. CT-00 3084-13

- ◉ Lawsuit
- ○ Divorce

*DIV I*

Ad Damnum $ _____

| | | |
|---|---|---|
| TAMRARIN LINDENBERG, Individually and as Natural Guardian of her minor children ZTAL and SMML | VS | JACKSON NATIONAL INSURANCE COMPANY |
| Plaintiff(s) | | Defendant(s) |

TO: (Name and Address of Defendant (One defendant per summons))

Jackson National Insurance Company
Commissioner of the Tennessee Department of Commerce and Insurance
Attn: Service of Process; 500 James Robertson Parkway,
Nashville, TN 37243

**Method of Service:**
- ○ Certified Mail
- ○ Shelby County Sheriff
- ⊘ Commissioner of Insurance ($)
- ○ Secretary of State ($)
- ○ Other TN County Sheriff ($)
- ○ Private Process Server
- ○ Other

($) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and serving a copy of your answer to the Complaint on  Molly Glover    Plaintiff's attorney, whose address is  130 North Court Ave, Memphis, TN 38103    , telephone    +1 (901) 524-5000 within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

JIMMY MOORE, Clerk / DONNA RUSSELL, Clerk and Master

TESTED AND ISSUED   *July 19 2013*   By  *April Hayes*   , D.C.

TO THE DEFENDANT:

NOTICE; Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a four thousand dollar ($4,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE ONLY, CALL (901) 222-2341

I, JIMMY MOORE / DONNA RUSSELL , Clerk of the Court,
Shelby County, Tennessee, certify this to be a true and
accurate copy as filed this

_____

JIMMY MOORE , Clerk / DONNA RUSSELL , Clerk and Master

By: _____ , D.C.

IN THE CIRCUIT COURT OF SHELBY COUNTY TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS



TAMRARIN LINDENBERG, individually
and as Natural Guardian of her minor
children ZTAL and SMML

VS.

JACKSON NATIONAL INSURANCE COMPANY

Docket No. CT-003084-13

Jury Demanded DIV V

---

COMPLAINT FOR BREACH OF CONTRACT, STATUTORY BAD FAITH, AND
COMMON LAW BAD FAITH

---

## PARTIES

1.    Plaintiff now is, and at all times relevant to this action, was, a resident of Shelby County, Tennessee, residing at 611 Duck Call Cove, Cordova Tennessee with her minor children ZTAL and SMML.

2.    Defendant, Jackson National Insurance Company, now is, and at all times relevant to this action was, a foreign corporation duly organized and existing under the laws of Michigan, and authorized by the Tennessee's Commissioner of Insurance to engage in the business of writing and selling life insurance in this state.

## JURISDICTION

3.    Plaintiff and her minor children reside in Shelby County Tennessee.   The lawsuit arises

---

from a breach of contract namely a life insurance policy which Defendants sold and delivered to Thomas A.Lindenberg hereinafter "decedent" in Shelby County Tennessee.

## FACTS

4.     In 2001, Defendant Jackson National Insurance Company issued and delivered to decedent its written policy of term life insurance with an effective date of January 23, 2002, Policy No. #0070665040, renewable to age 95, insuring his life in the sum of $350,000 and designating Plaintiff as primary beneficiary.   A copy of the policy is attached as Exhibit 1, and incorporated by reference. The Policy provides as follows:

> **THE COMPANY WILL PAY** the face amount shown in the policy specifications, less any premium due, to the designated beneficiary upon proof of the Insured's death *and not later than two months after the receipt of such proof. (*Italics added.*)*

5.     In 2005, Plaintiff and decedent were divorced in Shelby County, Tennessee.   A copy of the Marital Dissolution Agreement (MDA) is attached hereto as Exhibit 2.   Plaintiff, Tamarin Lindenberg,   at all times has remained the primary designated beneficiary of the policy.

6.     The MDA expressly relieved Husband Thomas Lindenburg of the financial responsibility for payment of the premiums of his term life insurance policies to which wife was the designated beneficiary.   The MDA states that "Wife shall pay for the life insurance premium for Columbus and Jackson National policies for so long as she is able to do so and still support the parties' children."   The Columbus policy was subsequently surrendered because decedent had taken out loans against the policy that equaled or would have exceeded the benefit due upon his death.    Plaintiff has been the named beneficiary at all times of the Jackson National

2

policy, the subject of this lawsuit.   In addition, the MDA imposed upon Husband the financial responsibility of maintaining "at his expense" a policy insuring his life in the amount of $450,000 and naming the "parties' children" as "irrevocable primary beneficiaries".

7.    On January 22, 2013, while the policy was in full force and effect, decedent died and promptly thereafter proof of his death was duly submitted to defendant by Plaintiff Tamarin Lindenberg. Payment of the burial benefits are due and owing to Radzieta Funeral Home by Defendant Jackson National and remain unpaid despite their having recieved authorization of Plaintiff Tamarin Lindenberg to pay these final expenses.

8.    At the time of his death and in the months prior to his death, decedent was living with Plaintiffs in New Jersey where Plaintiff Tamarin Lindenberg had temporarily relocated for her work.   Decedent had been declared disabled and his condition made it difficult for him to earn sufficient income to provide for himself and the children.   Plaintiff Tamarin Lindenberg did not want to deprive him of his rights to be with his children and therefore moved him to the location where her company had temporarily relocated her in New Jersey.   Plaintiff had long provided for him following their divorce and continued to provide for him until his death.   Plaintiff's job ended in December 2012 and the decedent died in New Jersey four weeks later on January 23, 2013.

9.    Plaintiff and the Decedent paid all premiums due and owing since the policy's inception in 2002 and further performed all other conditions of the policy.

10.   Upon the death of decedent, Plaintiff Tamarin Lindenberg promptly provided all requested documentation to Defendant Jackson National and completed its required claims forms. The forms along with the parties MDA were sent to Defendant on February 2, 2013 via express mail, next day delivery. On numerous occasions Plaintiff Tamarin Lindenberg provided

additional information and documentation Defendant requested and/or recommended that she obtain and on several occasions was later told the company would not consider said information. In addition, Defendant required her to obtain a written waiver from the Insured's adult daughter from a prior marriage. It rejected the first waiver Plaintiff produced and thereafter advised Plaintiff it would send a waiver to be signed by the adult daughter. Said waiver has never been furnished by Defendant. Despite producing all documents requested by Defendant, it has refused to pay benefits to which Plaintiffs are entitled.

11.     On March 11, 2013, a written demand was sent to Defendant setting forth the legal basis of Plaintiffs' claim and requesting prompt payment of the subject life insurance benefits. The demand letter advised Defendant of the family's situation and the need for immediate payment of the funds. It further advised of Tennessee's bad faith statute and the accompanying penalty for failure to timely pay benefits.

12.     As of the date of the filing of this Complaint, Defendant Jackson National has made no payment to Plaintiffs despite Plaintiff's ongoing demands that she is immediately entitled to the policy proceeds without having to obtain waivers from contingent beneficiaries or meet other unnecessary conditions which are not imposed by the policy.

13.     On March 22, 2013, while Plaintiff was still in New Jersey awaiting the children's school year to end before returning to Memphis with them, Jackson National, by letter, advised Plaintiff Tamarin Lindenberg that it had "insufficient basis to pay the claim" and further stated "[i]n order to pay the claim in full to Ms. Tamarin Lindenberg (sic) Jackson will require" :

        1.     "[W]aivers to be signed by other potential parties in this matter";

        2.     Plaintiff to "obtain court-appointed Guardian(s) for the Estates of the two minor children. The Guardians cannot be Tamarin Lindenberg" The Guardians will need to sign

waivers for the minor children." ; and

    3.  "[A] waiver to be signed by Mr. Lindenberg's other children.  We know of one other child, Mary A. Lindenberg.   Jackson may also require an affidavit indicating that Mr. Lindenberg has no other children."

14.   In addition to all its other demands, Defendant claimed it needed a written waiver from Plaintiff Tamarin Lindenberg before it would tender any funds.   Despite her repeated requests Defendant has failed to send Plaintiff documents she has requested that Defendant claims it must have before payment is made on the policy.   Additionally, Tamarin Lindenberg explained to Defendant that she was in New Jersey and could not leave her children to establish guardianships in Tennessee.   To date Defendant has not paid benefits to Plaintiff or interpled the funds with the Court.

## BREACH OF CONTRACT

15.   Decedent and Plaintiff Tamarin Lindenberg performed all obligations required of them under the subject policy.   Defendant Jackson National has breached its obligations under the subject policy and Plaintiff and her minor children have suffered economic damages as a result of the breach.

## BAD FAITH

16.   Despite her compliance with all requests of Defendant and despite her providing Defendant with clear proof that the subject policy should be paid directly to her, Defendant has failed to pay the policy or provide its analysis or a reasonable explanation for its refusal to pay the face value of the policy to Plaintiff Tamarin Lindenberg. It has subjected Plaintiff Tamarin Lindenberg and the minor plaintiffs to an unreasonable and protracted review process and made numerous unreasonable requests of Plaintiffs.   It has without basis stated it would only

pay benefits if Plaintiffs bore the costs of attorneys and legal proceedings in Tennessee to establish guardianships in Tennessee while she was in New Jersey with her children and in immediate need of funds to support her family. Defendant's conduct is willful and malicious having no purpose or intent other than forcing Plaintiff into unnecessary legal proceedings in an attempt to further delay its duty to pay under the policy.

17.   Its refusal to pay pursuant to the terms of the policy within 60 days of receiving written demand for payment   constitutes statutory bad faith entitling plaintiff to the maximum statutory penalty allowed by T.C.A. §56-7-105,   there being no just or valid cause why payment from Defendant should have been denied or delayed.   In addition, Defendant's conduct amounts to common law bad faith due to the aforementioned acts as well as its failure to acknowledge with reasonable promptness and ignoring requests for information and its failure to adopt and implement reasonable standards for prompt investigation and settlement of claims under the policy, all of which are in violation of Tennessee laws regulating the insurance industry as set forth at TCA § 56-8-105.

## PRAYER FOR RELIEF

As a direct result of Defendant's breach of contract and wrongful refusal to pay benefits Plaintiff and her minor children have suffered damages.  As a result Plaintiffs are entitled to recover from defendant, in addition to the $350,000 owed pursuant to the policy, a penalty of 25% of the policy amount, and in addition, extra-contractual damages including reasonable attorney's fees required to prosecute this action against Defendant.

WHEREFORE, Plaintiffs request:

1. Judgment against defendant in the amount of $350,000 with interest on that amount as allowed by law from January 23, 2013 until date of payment;

2. Extra-contractual damages for bad faith including the maximum statutory penalty and an amount to be assessed by the trier fact under the common law for damages flowing from Defendant's conduct, including reasonable attorney fees;

3. Reasonable attorney's fees and costs of litigation;

4. Such other and further equitable relief as the court deems just and proper; and

5. A trial by jury once all issues are joined.

Respectfully submitted,
BURCH, PORTER & JOHNSON, PLLC


MOLLY A. GLOVER (BPR #16113)
130 North Court Ave.
Memphis, Tennessee 38103
mglover@bpjlaw.com
T: (901) 524-5000
F: (901) 524-5024

# JACKSON NATIONAL LIFE INSURANCE COMPANY

### 1 Corporate Way
### Lansing, Michigan 48951
### A Stock Company

*Will pay the benefits provided in this policy,*
*subject to its terms and conditions.*



---

POLICY NUMBER  0070665040

THE INSURED Thomas A Lindenberg

THE OWNER  Thomas A Lindenberg

PLAN  RENEWABLE TERM TO AGE 95
    WITH PREMIUM CHANGE PROVISION

   FACE AMOUNT        ██████████

   B E N E F I T S

RENEWABLE TERM TO AGE 95
   15 YEAR
*INITIAL ANNUAL PREMIUM YEARS 1-15

TERMINAL ILLNESS RIDER
  Thomas A Lindenberg

POLICY DATE January 23, 2002

AGE 60   MALE

CLASS STANDARD NON-TOBACCO

ISSUE DATE January 23, 2002

ANNUAL PREMIUMS YEARS PAYABLE

| | ANNUAL PREMIUMS | YEARS PAYABLE |
|---|---|---|
| *INITIAL ANNUAL PREMIUM YEARS 1-15 | $3,070.00 | 15 |
| TERMINAL ILLNESS RIDER | | 35 |

BENEFICIARY AS INDICATED ON APPLICATION

   SCHEDULE
   CURRENT PREMIUM: MONTHLY

   BEGINNING:
         January 23, 2002
*  (RENEWABLE PREMIUMS AS IN ENCLOSED SCHEDULES)

PREMIUM PAYABLE AS FOLLOWS

   TOTAL PREMIUM:

██████

### 20-DAY RIGHT TO EXAMINE
THE OWNER OF THIS POLICY SHALL HAVE THE RIGHT TO RETURN THIS POLICY TO THE
COMPANY OR THE AGENT FROM WHOM THIS POLICY WAS PURCHASED WITHIN 20 DAYS OF
ITS DELIVERY FOR CANCELLATION AND RECEIVE A FULL REFUND OF THE PREMIUM PAID.

RENEWABLE  TERM INSURANCE
TO AGE 95 WITH PREMIUM
CHANGE PROVISION. MAXIMUM
PREMIUMS AS SHOWN
IN SCHEDULE. CONVERTIBLE
TO AGE 65.
NON-PARTICIPATING.

This contract is signed at the Home Office of
Jackson National Life, Lansing, Michigan.

Secretary

President and Chief Executive Officer



L1665

## BASIC BENEFITS

**THE COMPANY WILL PAY** the face amount shown in the policy specifications, less any premium due, to the designated beneficiary upon due proof of the Insured's death and not later than two months after the receipt of such proof.

## GENERAL PROVISIONS

**POLICY NOT CONTESTABLE BY THE COMPANY AFTER TWO YEARS** After this policy has been in force during the lifetime of the Insured for two years from the issue date, it cannot be contested except for nonpayment of premiums.

**AMOUNT PAYABLE IN EVENT OF SUICIDE WITHIN TWO YEARS** If the Insured dies by suicide, while sane or insane, within two years from the issue date, the amount payable by the Company will be equal to the premiums paid.

**AMOUNT OF PROCEEDS** Proceeds payable at the death of the Insured will be the sum of:
1) the face amount, as provided in the policy specifications, then in force;
2) any insurance on the life of the Insured provided by benefit riders; and
3) any premiums paid beyond the current payment period;

Less:
1) the portion of any premium due and unpaid which applies to a period prior to the date of death of the Insured.

**CHANGE OF PLAN** The plan or amount of insurance, or both, may be changed by mutual agreement with the Company.

**HOW BENEFICIARY MAY BE CHANGED** While this policy is in force, the Owner may change the beneficiary, unless otherwise provided by endorsement, by filing at the Home Office of the Company an acceptable written request. Such change will be subject to any existing assignment of this policy and will take effect only when recorded by the Company at its Home Office. When recorded, the change will take effect on the date the notice was signed. Any proceeds paid before a change of beneficiary is recorded will not be subject to the change.

**DEATH OF BENEFICIARY** The interest of any beneficiary who dies before the Insured will end at the death of the beneficiary. The interest of any beneficiary who dies at the time of or within ten days after the death of the Insured will also end if no proceeds have been paid to that beneficiary. If the interest of all designated beneficiaries has ended, any proceeds will be payable to the estate or legal successors of the Insured.

**ASSIGNMENT** No assignment of this policy will be binding on the Company until it is filed with the Company at its Home Office. The Company will assume no responsibility for the validity or sufficiency of any assignment.

**MISSTATEMENT OF AGE OR SEX** If the age or sex of the Insured has been misstated, the benefits available under this contract will be those which the premiums paid would have purchased at the correct age and sex.

**CONSIDERATION: ENTIRE CONTRACT** The consideration for issuing this policy is the application and the payment of the first premium. This policy and the application, a copy of which is attached and made a part of the policy, constitute the entire contract between the parties. All statements made in the application will, in the absence of fraud, be deemed representations and not warranties. No statement will void this policy or be used as a defense to a claim unless it is contained in such written application.

**MODIFICATION OF POLICY** Only the president, a vice president, the secretary, or an assistant secretary of the Company has power on behalf of the Company to change, modify, or waive the provisions of this policy and then only in writing. No agent or person other than the above named officers has the authority to change or modify this policy or waive any of its provisions.

**NONPARTICIPATING** This policy does not pay dividends nor share in the surplus of the Company.

## PAYMENT OF PROCEEDS

**PAYMENT** Any amount payable at death, maturity or upon surrender of this policy will be paid in one sum unless otherwise agreed.

**PAYMENT OPTIONS** In lieu of a single sum payment one of the following payment options may be elected if the amount payable exceeds $2,000.

**OPTION 1 - PROCEEDS AT INTEREST** Proceeds may be left on deposit during the lifetime of the payee or for a specified period. Interest will then be paid annually. The rate of interest will be no less than 4% per year. All or part of the proceeds may be withdrawn at any time.

**OPTION 2 - PAYMENT FOR A FIXED PERIOD** Proceeds may be paid in monthly payments until the proceeds, plus interest, are paid in full. The period is shown in the table. The present value of any unpaid payments may be withdrawn at any time and will be paid if a payee dies before the last payment is made.

**OPTION 3 - LIFE INCOME** Proceeds may be paid in monthly payments during the lifetime of the payee. A minimum number of payments may be guaranteed if desired. The amounts of the monthly payments are shown in the table. Payment under this option is subject to satisfactory proof of the age of the payee. If the payee dies before the guaranteed payments have been paid, the present value of the remaining guaranteed payments will be paid.

**MINIMUM PAYMENTS** The minimum payment under Option 1 is $100. The minimum payment under the other Options is $25.

**EXCESS INTEREST** Excess interest as declared by the Company may be used to increase payments.

**ELECTION OF PAYMENT OPTIONS BY OWNER** The Owner may elect or change any payment option during the lifetime of the Insured. The election or change can be made by written notice to the Company.

**ELECTION OF PAYMENT OPTIONS BY BENEFICIARY** If no payment option is in effect at the Insured's death, a payment option may be elected by the beneficiary. The election can be made by written notice to the Company.

**ADJUSTED AGE** The adjusted age is determined from the actual age nearest birthday and the calendar year of birth.

| Calendar Year of Birth | Adjusted Age |
|---|---|
| Before 1900 | Actual Age Plus 2 |
| 1900-1919 | Actual Age Plus 1 |
| 1920-1939 | Actual Age |
| 1940-1959 | Actual Age Minus 1 |
| 1960-1979 | Actual Age Minus 2 |
| 1980 and After | Actual Age Minus 3 |

**AVAILABILITY OF OPTIONS** These options are not available if the beneficiary is an assignee, corporation, partnership, association, trustee, executor, administrator or any fiduciary.

**CLAIMS OF CREDITORS** To the extent permitted by law, proceeds will not be subject to any claims of a payee's creditors.

**FREQUENCY OF PAYMENTS** The payments shown in the table are monthly payments. Payments may be made one, two or four times per year if desired. These payments are obtained as follows:

| NUMBER OF PAYMENTS PER YEAR | METHOD OF CALCULATION |
|---|---|
| One | Monthly Payment Multiplied by 11.787 |
| Two | Monthly Payment Multiplied by 5.951 |
| Four | Monthly Payment Multiplied by 2.990 |

## CONVERSION SECTION

**CONVERSION** While this policy is in force, it may be converted to any level premium whole life policy made available by the Company for conversion. Evidence of insurability will not be required. Conversion may occur at any time prior to the policy anniversary coinciding with or next following the 65th birthday of the Insured. The new policy will be issued on the same class of risk as this policy for the amount of insurance then in effect. If the request is for benefits greater than those contained in this policy, the Company may require evidence of insurability. Such conversion will require the written request of the Owner and payment of the required premium. At least one plan will always be available for conversion of the amount of insurance provided by this policy.

The policy date of the new policy will be the date of conversion. The new policy premium will be based on the premium rate for the attained age of the Insured in accordance with the premium rates and policy forms in use on the date of conversion. The amount of insurance must not be less than that which is issued by the Company on the plan desired. The incontestable and suicide provisions of the new policy will run from the date of issue of this policy.

A rider providing benefits in the event of total and permanent disability or additional benefits in the event of accidental death will be included in the new policy only with the consent of the Company.

## DECREASING TERM INSURANCE OPTION

Within 60 days before any policy anniversary after the tenth, the Owner has the right to elect to continue payment of the current premium in force in lieu of paying the increased premium next due. In such event, the face amount of this policy will be reduced to the product of (1) the face amount specified in the policy specifications times (2) the ratio of (i) the basic premium for the attained age one year prior to the date this option is elected to; (ii) the basic premium for the attained age on the policy anniversary coinciding with the date this option is elected. Such election will continue in force and successive such decreases will be made in the face amount of this policy as are appropriate on each policy anniversary. The basic premium is the premium actually being charged for this policy at the time this option is elected less a $50.00 policy fee and any extra premium for attached riders. A schedule showing the new face amounts will be sent to the Owner.

## RESERVE SECTION

**RESERVE BASIS** The reserve on this policy shall be computed upon the Commissioners' 1980 CSO Mortality Tables, smoker or nonsmoker, with selection factors applied, with interest at 5% by the Commissioners' Reserve Valuation Method. All computations take into account that this policy is issued without regard to the Insured's sex, age nearest birthday and on the assumption that premiums are paid annually and that deaths occur at the end of the year. Any benefits provided by attached riders are excluded from these computations.

Form No. 6541 5/92

# JACKSON NATIONAL LIFE INSURANCE COMPANY



| 1 Corporate Way | | Lansing, Michigan 48951 |
|---|---|---|

### SCHEDULE OF MAXIMUM
### ANNUAL PREMIUMS

TYPE OF POLICY      RENEWABLE TERM TO AGE 95 -   15 YEARS
                          WITH PREMIUM CHANGE PROVISION

INSURED   Thomas A Lindenberg        POLICY NO.   0070665040        AGE   60        MALE

POLICY DATE     January 23, 2002        FACE AMOUNT         $350,000

| | | | |
|---|---|---|---|
| January 23, 2002 | $3,070.00 | January 23, 2020 | $54,989.00 |
| January 23, 2003 | $3,070.00 | January 23, 2021 | $60,064.00 |
| January 23, 2004 | $3,070.00 | January 23, 2022 | $65,629.00 |
| January 23, 2005 | $3,070.00 | January 23, 2023 | $73,619.50 |
| January 23, 2006 | $3,070.00 | January 23, 2024 | $82,761.50 |
| January 23, 2007 | $3,070.00 | January 23, 2025 | $93,212.50 |
| January 23, 2008 | $3,070.00 | January 23, 2026 | $104,864.00 |
| January 23, 2009 | $3,070.00 | January 23, 2027 | $117,555.00 |
| January 23, 2010 | $3,070.00 | January 23, 2028 | $131,114.00 |
| January 23, 2011 | $3,070.00 | January 23, 2029 | $145,471.00 |
| January 23, 2012 | $3,070.00 | January 23, 2030 | $160,409.00 |
| January 23, 2013 | $3,070.00 | January 23, 2031 | $176,096.00 |
| January 23, 2014 | $3,070.00 | January 23, 2032 | $192,728.00 |
| January 23, 2015 | $3,070.00 | January 23, 2033 | $210,546.50 |
| January 23, 2016 | $3,070.00 | January 23, 2034 | $230,062.50 |
| January 23, 2017 | $41,220.00 | January 23, 2035 | $251,997.00 |
| January 23, 2018 | $45,602.00 | January 23, 2036 | $279,451.00 |
| January 23, 2019 | $50,208.00 | | |

POLICY EXPIRES:   January 23, 2037

RENEWABLE TERM INSURANCE
TO AGE 95 WITH PREMIUM
CHANGE PROVISION. MAXIMUM
PREMIUMS AS SHOWN IN SCHEDULE.
CONVERTIBLE TO AGE 65.
NON-PARTICIPATING



## JACKSON NATIONAL LIFE INSURANCE COMPANY
1 Corporate Way
Lansing, Michigan 48951

### TERMINAL ILLNESS RIDER

> Death benefits, cash values and loan values will be reduced if an accelerated benefit is paid. An accelerated benefit may be taxable. As with all tax matters, a personal tax advisor should be consulted.

This rider is made a part of the policy to which it is attached. The terms of your policy also apply to this rider except as they are changed by the terms of this rider.

### ACCELERATED BENEFIT

**AMOUNT OF BENEFIT** The amount of accelerated benefit provided shall be:

1) As requested by the Owner up to 100% of the policy face amount subject to an aggregate maximum of $250,000;

Less:

1) an actuarial discount for 12 months' interest. The interest rate used in the calculation will be as declared by the Board of Directors but not greater than 8%; and
2) any outstanding policy loan and loan interest due and unpaid, multiplied by the benefit ratio; and
3) any premium due and unpaid during a policy's grace period which applies to a period before the date of entitlement; and
4) an administrative expense charge as determined by the Company. This charge will not exceed $100.

**ADJUSTMENTS TO THE POLICY** After the payment of an accelerated benefit, the policy face amount will be subject to the following adjustments:

1) The face amount, value accumulation, guaranteed cash value, actual cash value and gross premium will be reduced by the benefit ratio.
2) Any outstanding loan and loan interest will be reduced by the portion of the loan repaid by any payment of a benefit under this rider.
3) If the benefit ratio is 100%, this policy will terminate.

Gross premium includes any additional riders, policy fees and any extra premium for special premium class. Future policy values will be calculated according to the methods described in the policy using the reduced amounts described above.

**LIMITATIONS** No benefit will be provided by this rider if terminal illness results from intentionally self-inflicted injuries. Any amount payable during a contestable period, due to suicide, will be reduced by any previously paid accelerated benefit.

**BENEFIT ENTITLEMENT**

1) The accelerated benefit under this rider is payable only once, regardless of the subsequent occurrence of the same or a different condition.
2) The policy and this rider must be in force.
3) The terminal illness must first manifest itself on or after the 30th day following the issue date of the rider. The accelerated benefit is payable for accidents on the issue date of this rider.
4) The accelerated benefit shall be payable to the Owner.
5) After the payment of an accelerated benefit, the Company will send the Owner a statement showing the effect of the payment on this policy.
6) If the Insured dies before an accelerated benefit is paid, no payment will be made under this rider.
7) The Company must receive the consent of all irrevocable beneficiaries and all assignees.

Form No. 9357 IN 4/92



**JACKSON NATIONAL LIFE INSURANCE COMPANY**
1 Corporate Way
Lansing, Michigan 48951

**DECREASING TERM INSURANCE OPTION**

This option will be available within 60 days before any policy anniversary after the 15th year.

Secretary

Form No. 7329 7/96

# JACKSON NATIONAL LIFE INSURANCE COMPANY

### A Stock Company

*Will pay benefits provided in this policy,*
*subject to its terms and conditions.*



### ENDORSEMENT

This endorsement is attached to and made part of your policy as of its Issue Date.

The Conversion provision is hereby deleted and replaced with the following revised provision:

**CONVERSION.** This policy may be converted to any level premium whole life policy made available by the Company at any time until attained age 80. Evidence of insurability is not required. The new policy will be issued using the same premium classification as this policy for the amount of insurance then in effect. If the request is for benefits greater than those contained in this policy, the Company may require evidence of insurability. Conversion will require Written Request from the Owner and payment of any required premium. At least one plan of insurance, equal to the amount of insurance provided by this policy, will always be available for conversion.

The policy date of the new policy will be the date of conversion. The new policy premium will be based on the premium rate for the attained age and premium classification of the Insured in accordance with current premium rates and policy forms in use on the date of conversion. The amount of insurance must not be less than that which is issued by the Company on the plan desired. The Incontestability and Suicide period of the new policy will be measured from the Issue Date of the original policy. However, if the amount of insurance benefits is greater than that which was issued on the original policy, the difference will be subject to a new Incontestability and Suicide period.

Any rider providing benefits in the event of total and permanent disability, or additional benefits in the event of accidental death, will be included in the new policy only with the consent of the Company.

Secretary

7228 4/96

## CONTRACT PROVISIONS

| SECTION | PAGE |
|---|---|
| Basic Benefits | 3 |
| General Provisions | 3 |
| Premium Payment Section | 4 |
| Ownership Section | 4 |
| Payment of Proceeds | 5 |
| Conversion Section | 7 |

Form No. 3005 TC 5/82



**Jackson National Life Insurance Company®**

One Corporate Way, Lansing, MI 48951

# Life Application
## Use Dark Ink Only

## 1. PROPOSED INSURED

First Name: THOMAS   Initial: A   Last Name: LINDENBERG

Date of Birth: 2/9/42   State of Birth: IND   Sex: M   Height: 5-9   Weight: 175

Day Phone Number: 901-751-9737   Evening Phone Number: 901-751-1148

Marital Status: M

Social Security Number:

Driver's License Number:   State Issued: TENN.

Home Address (Number, Street and Apt. #): 611 DUCK CALL CV.   City: CORDOVA   State: TN   ZIP: 38018

This application is for: ☒ Primary Insured   ☐ Second Insured   ☐ Rider

Occupation: BUS. OWNER   Earned Income: 36,000+   Net Worth: 100,000+

## 2. FOREIGN TRAVEL

Do you plan to reside or travel outside the U.S. or Canada within the next 2 years?   ☐ Yes   ☒ No

Where?   Wher?

How long?   How often?

## 3. PERSONAL PHYSICIAN

Name of primary health care provider/personal physician. If none, check box.   None ☐

Dr. ARA HANNSSIAN

Address: COLLIERVILLE TN.   901-853-0924

City:   State:   ZIP:   Telephone number:

Date last consulted: FEB 2001 (est.)   Reason: General annual exam

## 4. REPLACEMENT

Will this application replace or change any existing life insurance or annuity?   ☐ Yes   ☒ No

If yes, company being replaced:

Complete Replacement Form.

Date of policy being replaced: N/A   Face amount being replaced: $

1035 Exchange?   ☐ Yes   ☐ No

## 5. LIFE INSURANCE HISTORY

Do you have any life insurance in force?   ☒ Yes   ☐ No

If yes, amount. $ 100,000

Do you have an application pending with another company?   ☐ Yes   ☒ No   Amount $

Do you have an application pending with JNL?

☐ Yes   ☒ No   Amount $ This one only

## 6. BENEFICIARY

Primary: Tamarin F. Lindenberg   Date of Birth: 8/1/61   Relationship: Spouse   % share: 100

Primary:   Date of Birth: / /   Relationship:   % share:

Primary:   Date of Birth: / /   Relationship:   % share:

Contingent: SURVIVING CHILDREN EQUALLY   Date of Birth:   Relationship:   % share:

Contingent:   Date of Birth: / /   Relationship:   % share:

## 7. OWNER
### If different than Proposed Insured

Owner's First Name:   Initial:   Last Name:

Owner's Relationship to Proposed Insured:   SAME

Owner's Address (Number, Street and Apt. #):

City:   State:   ZIP:   Telephone Number:

Owner's Social Security Number or Tax ID Number:

## 8. PLAN, BENEFITS & RIDERS

Plan Name: Preferred Reward Xtra 15   Policy Date: When issued

Date to Save Age? ☒ Yes   ☐ No

Face Amount: 400,000

Automatic Premium Loan if available?   ☐ No

Benefit Riders (if available on plan selected)

☐ Waiver   ☐ Accidental Death $

Additional Benefit Riders:

Policy Option (Universal Life Only)

☐ Option A (Level)   ☐ Option B (Increasing)

Endorsement/Remarks: Save age @ 59   Preferred

X3200 IN Rev. 11/97

R082000

**MAKE CHECKS PAYABLE ONLY TO JACKSON NATIONAL LIFE INSURANCE COMPANY®**

I represent that the answers and statements in this application consisting of all Parts, and any amendments, are true, complete and correctly recorded. I acknowledge that the Company will rely on these answers and statements in determining whether, and on what terms, to issue a policy. I understand if any answers and/or statements are false, incomplete or incorrectly recorded, any policy issued may be void. I agree any policy based on this application shall not take effect unless and until: a) the policy is issued during the lifetime of the Proposed Insured and b) the first full premium is received by the Company during the lifetime of the Proposed Insured. I understand that no agent or broker is authorized to accept risks or pass upon insurability, to make or modify contracts or to waive any of the Company's rights or requirements. I understand that no waiver or modification shall be binding upon the Company unless in writing and signed by the president or vice president.

I authorize any physician, medical practitioner, hospital or medically related facility, insurance company, the Medical Information Bureau ("MIB") or any other institution or person having any records or knowledge of me or of my health, to give such information to Jackson National Life, if they choose to request such information, or its reinsurers to determine eligibility for insurance. I understand information obtained will only be released to reinsurers, the MIB, persons performing services in connection with my application or claim or as lawfully required. I agree that this authorization is valid for 26 months, that a photocopy of it is as valid as the original and that I may request a copy of this authorization. I understand and agree that the Company is under no obligation to pay a claim under the policy applied for unless my beneficiaries provide the Company with this same authorization in the event of a claim.

Signed at (city/state) _Fort Wayne, Ind._   on (date) _8-18-01_

WADE A. FREDRICK   6074
Agent's Name (please print)   Agent No

X _W. A. Fredrick, CLU_
Signature of Agent

X _James C. Bradley_   _8/18/01_
Signature of Proposed Insured   Date

X _____
Signature of Owner

X _____
Signature of Parent or Guardian (if necessary)

v. 11/97

R082000



**Jackson National Life**
Insurance Company®

One Corporate Way, Lansing, MI 48951

# Life Application
### Use Dark Ink Only

## 1. PROPOSED INSURED

First Name **THOMAS**   Initial **A**   Last Name **LINDENBERG**

Date of Birth **2/9/42**   State of Birth **IND**   Sex **M**   Height **5-9**   Weight **175**

Day Phone Number **901-751-9737**   Evening Phone Number **901-751-1148**

Marital Status **M**

Social Security Number

Driver's License Number   State Issued **TENN.**

Home Address (Number, Street and Apt. #) **611 DUCK CALL CV.**   City **CORDOVA**   State **TN**   ZIP **38018**

This application is for:
☒ Primary Insured   ☐ Second Insured   ☐ Rider

Occupation **BUS. OWNER**   Earned Income **# 36,000 +**   Net Worth **# 100,000 +**

## 2. FOREIGN TRAVEL

Do you plan to reside or travel outside the U.S. or Canada within the next 2 years?   ☐ Yes   ☒ No

Where?   When?

How long?   How often?

## 3. PERSONAL PHYSICIAN

Name of primary health care provider/personal physician. If none, check box.   None ☐
**DR. ARA HANNSSIAN**

Address **COLLIERVILLE   TN.   901-853-0924**
City   State   ZIP   Telephone number

Date last consulted **FEB. 2601 (est.)**   Reason **General annual exam**

## 4. REPLACEMENT

Will this application replace or change any existing life insurance or annuity?   ☐ Yes   ☒ No

If yes, company being replaced:

Complete Replacement Form.   **N/A**
Date of policy being replaced:   Face amount being replaced:
/ /   $

1035 Exchange?   ☐ Yes   ☐ No

## 5. LIFE INSURANCE HISTORY

Do you have any life insurance in force?   ☒ Yes   ☐ No
If yes, amount. $ **100,000**

Do you have an application pending with another company?   ☐ Yes   ☒ No   Amount $

Do you have an application pending with JNL?
☐ Yes   ☒ No   Amount $ **This one only**

## 6. BENEFICIARY

Primary **Tamaria F. Lindenberg**   Date of Birth **8/1/61**   Relationship **Spouse**   % share **100**

Primary   Date of Birth / /   Relationship   % share

Primary   Date of Birth / /   Relationship   % share

Contingent **SURVIVING CHILDREN EQUALLY**   Date of Birth   Relationship   % share

Contingent   Date of Birth / /   Relationship   % share

## 7. OWNER
### If different than Proposed Insured

Owner's First Name   Initial   Last Name

Owner's Relationship to Proposed Insured

Owner's Address (Number, Street and Apt. #)   **SAME**

City   State   ZIP   Telephone Number

Owner's Social Security Number or Tax ID Number

## 8. PLAN, BENEFITS & RIDERS

Plan Name **Preferred Reward Xtra 15**   Policy Date **When issued**   Date to Save Age? ☒ Yes ☐ No

Face Amount **400,000**   Automatic Premium Loan if available?   ☐ No

Benefit Riders (if available on plan selected)
Waiver $ _____   ☐ Accidental Death $ _____

Additional Benefit Riders

Policy Option (Universal Life Only)
☐ Option A (Level)   ☐ Option B (Increasing)

Endorsement/Remarks:
**Save age @ 59**
**Preferred**

X3200 IN Rev. 11/97

R002000

**MAKE CHECKS PAYABLE ONLY TO JACKSON NATIONAL LIFE INSURANCE COMPANY®**

I represent that the answers and statements in this application consisting of all Parts, and any amendments, are true, complete and correctly recorded. I acknowledge that the Company will rely on these answers and statements in determining whether, and on what terms, to issue a policy. I understand if any answers and/or statements are false, incomplete or incorrectly recorded, any policy issued may be void. I agree any policy is issued during the lifetime of the Proposed Insured and b) the first full premium is received by the Company during the lifetime of the Proposed Insured. I understand that no agent or broker is authorized to accept risks or pass upon insurability, to make or modify contracts or to waive any of the Company's rights or requirements. I understand that no waiver or modification shall be binding upon the Company unless in writing and signed by the president or vice president.

I authorize any physician, medical practitioner, hospital or medically related facility, insurance company, the Medical Information Bureau ("MIB") or any other institution or person having any records or knowledge of me or of my health, to give such information to Jackson National Life, if they choose to request such information, or its reinsurers to determine eligibility for insurance. I understand information obtained will only be released to reinsurers, the MIB, persons performing services in connection with my application or claim or as lawfully required. I agree that this authorization is valid for 26 months, that a photocopy of it is as valid as the original and that I may request a copy of this authorization. I understand and agree that the Company is under no obligation to pay a claim under the policy applied for unless my beneficiaries provide the Company with this same authorization in the event of a claim.

Signed at (city/state) _Fort Wayne, Ind._ ___ on (date) _8-18-01_ ___

X ___

WADE A. FREDRICK    6074
Agent's Name (please print)            Agent No          Signature of Proposed Insured          _8/18/01_  Date

X _W. A. Fredrick, CLU_ ___
Signature of Agent

X ___
Signature of Owner

X ___
Signature of Parent or Guardian (if necessary)

J. 11/97                                                                                    R082000

**READ CAREFULLY BEFORE SIGNING**

(1) I declare that my answers and statements are correctly recorded, complete and true to the best of my knowledge and belief.

(2) I hereby authorize any licensed physician, medical practitioner, hospital, clinic, or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person that has any records or knowledge of me or my health to give any such information to Jackson National Life Insurance Company. A photographic copy of this authorization shall be as valid as the original. This authorization shall be valid for a period of 30 months.

(3) I understand that my statements and answers in this application must continue to be true as of the date I receive the policy. I understand that if any of my answers or statements change prior to delivery of the policy, I must so inform the Company in writing.

Date  8·28·01

Signature of Proposed Insured (or Informant)

Witness

38855482   38855482

READ CAREFULLY BEFORE SIGNING

(1) I declare that my answers and statements are correctly recorded, complete and true to the best of my knowledge and belief.

(2) I hereby authorize any licensed physician, medical practitioner, hospital, clinic, or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person that has any records or knowledge of me or my health to give any such information to Jackson National Life Insurance Company. A photographic copy of this authorization shall be as valid as the original. This authorization shall be valid for a period of 30 months.

(3) I understand that my statements and answers in this application must continue to be true as of the date I receive the policy. I understand that if any of my answers or statements change prior to delivery of the policy, I must so inform the Company in writing.

Date _____ 8·28·01 _____

Signature of Proposed Insured (or Informant)

Witness

N. 9/00

38654482

38654482

IN THE CHANCERY COURT OF TENNESSEE
FOR THE THIRTHIETH JUDICIAL DISTRICT AT MEMPHIS

THOMAS A. LINDENBERG

v.

TAMARIN FULLER LINDENBERG

F I L E D
SHELBY COUNTY
CHANCERY COURT
NOV 1 6 2005
KENNY W. ARMSTRONG, C & M
TIME:

No. CH-05-0519
Part 2

## MARITAL DISSOLUTION AGREEMENT

THIS agreement is made and entered into by and between Thomas A. Lindenberg, who hereinafter may be referred to as "Husband," and Tamarin Fuller Lindenberg, who hereinafter may be referred to as "Wife."

W I T N E S S E T H

WHEREAS, the parties are married, and have two children, namely, who are the product of the marriage, these children are minors; and

WHEREAS, both parties agree and stipulate that this agreement makes fair and equitable provisions for the distribution of the property of the parties and makes adequate and sufficient provisions for the care, custody, and support of any children the parties may have as a result of the marriage; and

WHEREAS, both parties have full knowledge of and have made full disclosure of all separate and marital assets; and

WHEREAS, Both parties acknowledge that discovery has not been completed and, although aware of the potential problems resulting from this, waive further discovery; and

WHEREAS, neither part at the time of this agreement is under the influence of any intoxicant or drug, legal or illegal, nor is any party experiencing any mental problems or conditions that would affect their judgment other than the stress normally to be expected in a divorce; and   WHEREAS, both parties are voluntarily executing this agreement free of undue

Page 1 of 12

PLAINTIFF                                    DEFENDANT

EXHIBIT

influence, duress, and free from any cause, reason, promise, or consideration other than set out in this agreement; and

WHEREAS, both parties realize that had this matter gone to trial, they may have received more or less than they are individually receiving under this agreement; and

WHEREAS, although certain items may be the separate property of a party they may still be described, transferred or otherwise dealt within this agreement to resolve the actual ownership; and

WHEREAS, only Wife is represented by William Monroe, Attorney, and the opposing party has obtained independent advice or waived same and is not relying upon the statements, certifications, representations, advice, or services of William Monroe;

THEREFORE, in consideration of the mutual covenants and agreements herein set forth, the parties do agree as follows:

## Credit

Neither party shall charge or cause to be charged to the other party any purchases that either of them may make after this agreement is entered into and shall not create any engagements or obligations in the name of or against the other nor shall either party hereafter secure or attempt to secure any credit upon or in connection with the other. Each warrants that there are no charges on the other's credit that have not been fully revealed to the other. All credit cards and charge cards have been returned to the person responsible for the account. If there are any such unrevealed charges, the party making those charges shall be responsible for the payment of those unrevealed charges.

## Waiver

Except for the terms and provisions of this Marital Dissolution Agreement, both parties waive and repudiate all right, title, and interest, consummate and inchoate, in and to the property and estate of the other including but not limited to marital, insurance, contractual, dower, homestead exemption, alimony, appointment as executor, or otherwise, in present or in expectancy about any and all property and estate of the other. Both parties waive and repudiate any interest in any will or testamentary writing except for any will or testamentary writing executed after the date of this agreement or as set out in this Marital Dissolution Agreement.

Page 2 of 12

PLAINTIFF

DEFENDANT

Each of the parties does hereby release and discharge the other from any and all control, claims, demands, actions, or causes of action, except for the obligations imposed by this instrument or by the Court's decree.  Both parties accept this as the full, final, and complete settlement of the property, marital, and all other rights of the parties.

Both parties agree that there exist certain paper copies of emails that are sensitive and confidential to each of the parties hereto.  Both parties specifically agree that neither of them shall disseminate to others the substance of the contents of said emails nor copies thereof to persons who are not signatories of this agreement and that neither party hereto waives any rights to seek judicial enforcement of this provision nor any damages that may result from violation of this provision. Said emails shall be returned to husband.

The parties waive any separate and distinct claim to any retirement or pension benefit of the other party except as may be set out by this agreement herein, although they are aware of their rights regarding any such pensions or retirement benefits.  However, should any provisions made for the payout of retirement benefits prove to be unable to be executed,  the property division shall be set aside and the Court will retain jurisdiction to make an equitable resolution in light of all the facts and issues.

### Entire Agreement

This agreement contains the entire understanding and agreement between the parties. There are no representations, warranties, covenants, or undertakings other than those expressly set forth herein, and each party enters into this contract voluntarily, advisedly, and with full knowledge of the financial condition, nature, character, and value of both parties' separate and marital property, estate, and income.  The law of the state of Tennessee shall govern this agreement in all respects.

### Interpretation

Both parties agree that the usual rule of construction that a document should be construed against the drafter of the document shall not be applied in interpreting this agreement.  The headings in this agreement are for convenience only and are not to be used in interpreting this agreement.  The singular shall include the plural and vice versa, when the context so requires.

Page 3 of 12

_____
PLAINTIFF

_____
DEFENDANT

Any exhibits to this agreement are hereby incorporated by reference into and made a part of this agreement.

### Nondischargeability

With respect to each party's responsibility for payment of certain debts and liabilities, and their obligation to hold the other harmless for the payment thereof, the parties understand and agree that their obligation is a non-dischargeable debt under the Bankruptcy Code, this obligation being part of the final financial support settlement for both parties.

Any party will have a right of setoff for any obligation for any violation of the other party.

### Necessary Documents and Actions

Each party at the request of the other will execute and deliver all documents and take such actions and that may be reasonably necessary to give full effect to this agreement.

This specifically includes the execution of a Quit Claim Deed; proof of life insurance and any other documents necessary to change or establish life insurance trusts or trustees.

### Noncompliance

Should either party incur any expense or legal fees in a successful effort to enforce any portion of this marital dissolution agreement, the Court SHALL award reasonable attorney's fees and suit expenses to the non-defaulting party. No breach, waiver, failure to seek strict compliance, or default of any of the terms of this agreement shall constitute a waiver of any subsequent breach or default of any of the terms of this agreement.

### Severance

Should the Court hold that any portion of this agreement is invalid, the remainder shall be in full force and effect and the invalid portion shall be struck from the agreement or modified as the Court shall order.

### Incorporation, Permanent and Pendente Lite

All such parts of this agreement as might be material, except those that might be lessened or destroyed, shall be incorporated in the Final Decree. Pending the entry of the Final Decree, the parties agree to the filing of this agreement and, by said filing, specifically consent to and authorize the entry of a Consent Order binding them to the terms of this agreement. By the

Page 4 of 12

_____
PLAINTIFF

_____
DEFENDANT

signing of this agreement, the parties stipulate to these terms being enforceable as if they were, at the moment of signing, an Order of this Court.

## Voluntary Execution

Each party acknowledges that this agreement has been entered into of his or her own volition with full knowledge and information including tax consequences. In some instances, it represents a compromise of disputed issues. Each believes the terms and conditions to be fair and reasonable under the circumstances. No coercion or undue influence has been used by or against either party in making this agreement. Each party acknowledges that no representations of any kind have been made to him or her as an inducement to enter into this agreement, other than the representations set forth herein. Both parties have had such access to records, documents, accounts, things, and experts as they desire. Both parties waive any claim to set this agreement aside based upon lack of knowledge or failure to disclose financial information.

## Modification

A modification or waiver of any or all of the provisions of this agreement shall be effective only if made in writing and executed with the same formality as this agreement, and approved by the Court if such approval is required. Failure of either party to insist upon strict performance of any of the provisions of this agreement shall not be construed as a waiver of any subsequent default of the same or similar nature.

## Restraining Provisions

Neither party shall molest, harass, interfere with, or impose any restraint upon the other except as set out in this agreement.

## Prior Tax Liabilities

Both parties represent and warrant, that all information supplied for all tax returns during the marriage are, in all respects, true, correct and complete and fully and accurately reflect income and deduction for those years.

The parties agree to file a joint income tax return for the year 2005 if such is allowed under the Internal Revenue Code and agree that any refund will be Wife's property to be used to pay marital debt or to support the parties children. Both parties realize that they may have liability to the Internal Revenue Service that may transcend any provisions of this agreement and

Page 5 of 12

_____
PLAINTIFF

_____
DEFENDANT

that William Monroe has not served as a tax advisor for either party but has recommended independent tax counsel.

Each party shall pay their respective share of any federal capital gains taxes resulting from the sale of any jointly owned property pursuant to this agreement.

Unprovided for Property

If there is any property interest (such as a retirement plan, bank account, stock) effect thereof (such as interest, dividends, or a lump sum payment that actually can only be paid in installments) then that property interest or the effect thereof which is not provided for in this agreement shall be equally divided between the parties. If it is established by a preponderance of the evidence that a party misrepresented or intentionally concealed a property interest, the effect thereof or an important characteristic thereof, the interest of the concealing party will be transferred in full to the non-concealing part and the concealing party will pay all costs, fees, expenses, attorney's fees, and damages of the non-concealing party caused by said concealment.

Divorce Proceedings Filed

A complaint for divorce has been filed in the Chancery Court of Shelby County, Tennessee, under docket # CH-05-0519, Part II. Wife is to pay all Court costs arising out of said divorce proceeding, if uncontested.

The Defendant, by signing this agreement, waives further service of process or notice and waives all rights under the Soldiers and Sailors Civil Relief Act. The Defendant acknowledges receipt of a copy of the complaint in this cause and stipulates to the truth and accuracy of the allegations therein. Further, the Defendant will make no other answer or counterclaim and consents to an entry of a Default Judgment and a Final Decree of Divorce and while acknowledging that Plaintiff's counsel does not represent Defendant, the Defendant specifically authorizes entry of said pleadings by Plaintiff's counsel.

Custody and Visitation

The parties hereto have contemporaneously herewith executed a Permanent Parenting Plan which shall govern the support, care, supervision and guidance of the parties' children.

Debts

Page 6 of 12

PLAINTIFF                                    DEFENDANT

Any debts not dealt with in this agreement shall be paid by the party who incurred the debt.

Husband is to pay, and hold Wife harmless for the following debts as an element of the division of the parties' property/nondeductible, nondischargeable alimony in solido, because payment of the debts are necessary for the Wife's support:

Each party shall pay and be responsible for one half of any balance owing and outstanding on the parties VISA credit card which is now thought to be approximately $20,000.00.

Wife is to pay, and hold Husband harmless for the following debts as an element of the division of the parties' property:

Wife shall pay for the Life Insurance premium for the Columbus and Jackson National policies for so long as she is able to do so and still support the parties children.

Wife shall pay the Husband's car payment on his current vehicle until the earlier of the sale of said vehicle or until Husband reaches the age of sixty five years less nine months, if and only if Wife has acquired employment for which she makes at least One Hundred Fifty Thousand Dollars per calendar year in Memphis or some other comparable market (SMSA). If Wife does not acquire a job as is set forth above or if Husband acquires a job for which he is paid Four Thousand Dollars per month then Wife may assist the Husband as she chooses taking into consideration that she is under no legal duty to do so.

Real Estate

The parties currently own property at 611 Duck Call Cove, Cordova, Tennessee.

The real estate will be disposed of as follows:

Wife shall occupy the property until sale.

The parties shall take all steps necessary to show and sell said real estate on the best terms available as soon as possible. Said property will be placed on the market for the amount of $238,000.00 within five days from the execution of this agreement, if it has not already been so listed prior hereto.

The parties mutually agree that Wife shall handle and shall be completely in charge of the sale of the property.

Page 7 of 12

_____
PLAINTIFF

_____
DEFENDANT

Should repairs or improvements be necessary to prepare the house for sale, the parties agree that the cost and expenses of those repairs shall be deducted from money received for said real estate at the time of closing.  Pending the sale of said home, Wife shall be responsible for the mortgage upkeep and Wife shall be responsible for the utilities, telephone, and general upkeep.

When the house is sold, there shall be deducted from the gross sales price the following:

> amount of the mortgage;
>
> legal fees for closing;
>
> costs of repairs or improvements;
>
> costs of sale;

The remaining balance shall be divided with twenty-five percent going to Husband and seventy-five percent going to Wife.

Husband shall deliver to Wife all documents in his possession or control regarding the acquisition and improvement of the marital residence for the purpose of determining the cost basis of the real estate and the capital gain upon the sale of the property.

The foregoing not withstanding, the parties mutually understand and acknowledge that given the parties current employment status that the Wife may not be able to prevent the foreclosure of the above property and that Husband may not be in a position to prevent foreclosure either. In the event that the property is foreclosed upon, each party shall be equally responsible for any deficiency balance due and owing therefrom.

Personalty Will Be Divided

The parties agree that they will, to their mutual satisfaction, divide the personal property that they own. Should they fail to divide the personal property to their mutual satisfaction within thirty (30) days from the execution of this agreement or, in any case, prior to this matter being heard for divorce, they shall so notify the Court. The absence of such notification to the Court shall constitute acknowledgment that the parties have divided the personal property to their mutual satisfaction. This agreement constitutes a Bill of Sale of said personalty in transferring said personalty to the above-mentioned party.

Businesses

_____          _____
PLAINTIFF                                                        DEFENDANT

Page 8 of 12

Businesses are defined as IEM, Inc. and any business in which Husband or Wife holds or has held an interest or management or supervisory position.

Husband conveys any interest in said businesses and assets of said businesses to Wife, resigns all offices and will expeditiously complete any documents necessary to carry out this agreement upon payment to Husband of $1.00 (One Dollar).

### Retirement

Each party shall keep any and all retirement or pension plans, including IRA's in their respective names which are now in existence free and clear from the claims of the other.

### Conversion of Health Insurance for Spouse

Wife shall cooperate so that Husband may obtain conversion privileges for health insurance policy providing coverage for hospital or medical expenses pursuant to T.C.A. 56-7-1501 and Title X of the U.S. Consolidated Omnibus Budget Reconciliation Act of 1985. Wife shall pay said premiums until Husband reaches the age of sixty five years less nine months, if and only if Wife has acquired employment for which she makes at least One Hundred Fifty Thousand Dollars per calendar year in Memphis or some other comparable market (SMSA). If Wife does not acquire a job as is set forth above or if Husband acquires a job for which he is paid Four Thousand Dollars per month then Wife may assist the Husband as she chooses taking into consideration that she is under no legal duty to do so.

### Life Insurance

Husband at his expense shall maintain in full force insurance on his life having death benefits payable to the parties' children as irrevocable primary beneficiaries in the sum of $450,000.00 until the youngest child reaches the age of twenty-two (22). Upon written request of said beneficiary or beneficiaries' agent, Husband shall furnish, without charge, proof of compliance with this paragraph within thirty (30) days from the date of such request. Proof of compliance shall be written acknowledgment by Husband's life insurance carrier of receipt of this document and compliance with this provision. In addition, said beneficiary or beneficiaries' agent is hereby authorized to obtain said documentation of compliance with this paragraph directly from employer or any insurance carrier insuring insured.

_____          _____
PLAINTIFF                            DEFENDANT

Page 9 of 12

Should husband fail to make payments on said life insurance, beneficiary has the option to continue making payments on said life insurance and to assess the cost of said premiums against insured. Beneficiary shall be the owner of said policy. Insured shall not have the right to borrow against any of said life insurance without written permission of beneficiary.

All policies covered or involved in these provisions will be delivered to within thirty (30) days of the signing of this agreement and an annual account of coverage and premium payment will be provided by insured.

Any failure to provide insurance as outlined above shall also be a claim against the estate of insured.

Insured represents that there are no loans or encumbrances of any nature against any of the above policies and that none of the policies are pledged in connection with any obligation. Insured shall not encumber or pledge any of the above policies or transfer or assign any interest in the above policies unless and until the obligations of Husband under this Agreement are fully satisfied and terminated.

Wife at her expense shall maintain in full force insurance on his life having death benefits payable to the parties' children as irrevocable primary beneficiaries in the sum of $500,000.00 until the youngest child reaches the age of twenty-two (22). Upon written request of said beneficiary or beneficiaries' agent, Wife shall furnish, without charge, proof of compliance with this paragraph within thirty (30) days from the date of such request. Proof of compliance shall be written acknowledgment by Wife's life insurance carrier of receipt of this document and compliance with this provision. In addition, said beneficiary or beneficiaries' agent is hereby authorized to obtain said documentation of compliance with this paragraph directly from employer or any insurance carrier insuring insured.

Should Wife fail to make payments on said life insurance, beneficiary has the option to continue making payments on said life insurance and to assess the cost of said premiums against insured. Beneficiary shall be the owner of said policy. Insured shall not have the right to borrow against any of said life insurance without written permission of beneficiary.

_____
PLAINTIFF

_____
DEFENDANT

Page 10 of 12

All policies covered or involved in these provisions will be delivered to within thirty (30) days of the signing of this agreement and an annual account of coverage and premium payment will be provided by insured.

Any failure to provide insurance as outlined above shall also be a claim against the estate of insured.

Insured represents that there are no loans or encumbrances of any nature against any of the above policies and that none of the policies are pledged in connection with any obligation. Insured shall not encumber or pledge any of the above policies or transfer or assign any interest in the above policies unless and until the obligations of Wife under this Agreement are fully satisfied and terminated.

### Alimony Waived

Wife and Husband claim no alimony either pendente lite permanent, periodic, in futuro, in solido, or rehabilitative, and waive any claim they might have thereto in any divorce action between them except as elsewhere set out in this document.

### Attorney's Fees

Only Wife is represented by William Monroe and will pay Mr. Monroe's fee in connection with this divorce proceeding and this agreement. The opposing party shall pay their own attorney's fees in connection with this litigation.

PLAINTIFF

DEFENDANT

Page 11 of 12

STATE OF TENNESSEE

COUNTY OF SHELBY

On this 18TH day of October , 2005 personally appeared THOMAS

A. LINDENBERG, to me known to be the person described in and who executed the foregoing

instrument and acknowledged that he or she executed the same as and for his or her free act and

deed.

Patricia D. Davidson

NOTARY PUBLIC

My commission expires

10-19-08

STATE OF TENNESSEE

COUNTY OF SHELBY

On this 8TH day of November , 2005 personally appeared

TAMARIN FULLER LINDENBERG, to me known to be the person described in and who

executed the foregoing instrument and acknowledged that he or she executed the same as and

for his or her free act and deed.

Patricia D. Davidson

NOTARY PUBLIC

My commission expires

PLAINTIFF

DEFENDANT

Page 12 of 12