IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| TAMARIN LINDENBERG, Individually and as Natural Guardian of her minor child S.M.L., and ZACHARY THOMAS LINDENBERG, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:13-cv-02657-JPM-cgc |
| v. | ) ) | |
| JACKSON NATIONAL LIFE INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW
AND GRANTING PLAINTIFF'S MOTION FOR
CERTIFICATION OF QUESTIONS TO THE TENNESSEE SUPREME COURT**

Before the Court are Defendant Jackson National Life
Insurance Company's Motion for Judgment as a Matter of Law, made
during trial on December 18, 2014 (see ECF No. 139) and brief
filed January 5, 2015 (ECF No. 158), and Plaintiff Tamarin
Lindenberg's Motion for Certification of Questions to the
Tennessee Supreme Court (ECF No. 167), filed May 19, 2015. For
the following reasons, Defendant's Motion is DENIED, and
Plaintiff's Motion is GRANTED.

**I.    PROCEDURAL BACKGROUND**

This case concerns a dispute over a life insurance policy
issued by Defendant Jackson National Life Insurance Company to

Decedent Thomas A. Lindenberg. (See Joint Pretrial Order at 4, ECF No. 125.) Plaintiffs Tamarin Lindenberg, minor child S.M.L., and Zachary Thomas Lindenberg, are the former wife of Decedent and the two children of Thomas and Tamarin Lindenberg. (Id.)

On July 19, 2013, Plaintiffs filed their Complaint in the Circuit Court of Shelby County, Tennessee, for the Thirteenth Judicial District at Memphis. (ECF No. 1-1.) On August 23, 2013, Defendant removed the case to the United States District Court for the Western District of Tennessee pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (ECF No. 1 at 1.)

On August 30, 2013, Defendant filed an Answer to the Complaint. (ECF No. 4.) Defendant included in the filing a Third-Party Complaint for Interpleader against Mary Angela Lindenberg Williams and a Counterclaim against Tamarin Lindenberg. (Id. at 5-8.) With regard to Defendant's Counterclaim and Third-Party Complaint, Defendant asserted that it "[was] not in a position to determine, factually or legally, who is entitled to the Death Benefit," and requested the Court to "determine to whom said benefits should be paid." (Id. at 7.) On September 23, 2013, Plaintiff Tamarin Lindenberg and Third-Party Defendant Mary Angela Lindenberg Williams filed a Motion to Dismiss Defendant Jackson National Life Insurance

2

Company's Counterclaim and Third-Party Complaint for
Interpleader. (ECF No. 9.) On December 9, 2013, the parties
filed a Joint Motion to Appoint James and Kimberly Griffith as
Guardians Ad Litem for the minor children. (ECF No. 19.) The
Motion was granted on December 10, 2013 (ECF No. 20).

On May 19, 2014, the Court granted Plaintiff Tamarin
Lindenberg's and Third-Party Defendant Mary Angela Lindenberg
Williams' Motion to Dismiss. (ECF No. 32.) The Court further
ordered Defendant "to disburse life insurance policy benefits to
Plaintiff in the amount of $350,000 with interest from January
23, 2013, until the date of payment." (Id. at 17.)

On August 21, 2014, Defendant filed a Motion to Dismiss
Plaintiffs' Claims for Punitive Damages and Common Law Bad
Faith. (ECF No. 46.) Plaintiffs timely responded in opposition
on September 17, 2014. (ECF No. 67.) Defendant filed a Reply
on September 26, 2014. (ECF No. 79.) The Court held a
telephonic hearing on, inter alia, the Motion to Dismiss on
November 25, 2014, at which both parties were represented. (ECF
No. 101.) On the same date, the Court entered an Order Granting
in Part Defendant's Motion to Dismiss Plaintiffs' Claims for
Punitive Damages and Common Law Bad Faith. (ECF No. 102.) In
the Order, the Court dismissed Plaintiffs' common law bad faith
claim. (Id.) On December 9, 2014, the Court issued a second

3

Order regarding Defendant's Motion to Dismiss, which denied
Defendant's motion to dismiss claims for punitive damages. (ECF
No. 124.)

On October 15, 2014, Defendant filed a Motion for Summary
Judgment. (ECF No. 87.) Plaintiffs responded in opposition on
November 17, 2014. (ECF No. 93.) Defendant filed a reply to
Plaintiffs' response on November 21, 2014. (ECF No. 99.) On
December 11, 2014, the Court granted Defendant's Motion for
Summary Judgment as to the claims brought by Zachary Lindenberg
and minor child S.M.L. and denied Defendant's Motion as to all
other claims. (ECF No. 129.)

A jury trial was held from December 15, 2014, to December
22, 2014. (ECF Nos. 133, 136, 138-39, 141, 146.) On December
18, Defendant made the instant Motion for Judgment as a Matter
of Law. (See ECF No. 139.) On December 22, 2014, the jury
returned its verdict with the following findings:

1. The preponderance of the evidence demonstrated that
   Defendant breached the terms of its contract with
   Plaintiff Tamarin Lindenberg. (Verdict Form, ECF No.
   151 at PageID 2015.) Plaintiffs were awarded actual
   damages in the amount of $350,000.00. (Id.)

2. The preponderance of the evidence demonstrated that
   Defendant's refusal to pay Plaintiff Tamarin

Lindenberg the death benefit was not in good faith. (Id. at PageID 2016.) Moreover, the preponderance of the evidence demonstrated that the refusal to pay resulted in additional expense, loss, or injury including attorney fees. (Id.) Plaintiffs were awarded bad faith damages of $87,500.00. (Id. at PageID 2017.)

3. Clear and convincing evidence demonstrated that Defendant acted either intentionally, recklessly, maliciously, or fraudulently. (Id. at PageID 2018.)

4. Plaintiffs were awarded punitive damages in the amount of $3,000,000.00. (ECF No. 152.)

On January 5, 2015, Defendant filed a brief in support of its Motion for Judgment as a Matter of Law. (ECF No. 158.) On January 12, 2015, Plaintiffs timely filed their Response in Opposition. (ECF No. 159.) On May 19, 2015, Plaintiffs filed a Supplemental Brief. (ECF No. 168.) On May 26, 2015, Defendant filed a Reply Brief. (ECF No. 172.)

Plaintiff filed a Motion for Certification of Questions to the Tennessee Supreme Court on May 19, 2015. (ECF No. 167.) Defendant filed a response on June 5, 2015. (ECF No. 174.) The State of Tennessee filed a Motion to Intervene and Memorandum in Support of the Motion to Intervene on June 12, 2015. (ECF Nos.

175-76.)  The Court granted the Motion to Intervene on June 16,

2015.  (ECF No. 177.)  On July 7, 2015, the State filed a

Response in Opposition to the Motion for Certification of

Questions (ECF No. 178) and a Response to Defendant's Motion for

Judgment as a Matter of Law (ECF No. 179).

## II.  FACTUAL BACKGROUND

Defendant issued a life insurance policy to Decedent Thomas

Lindenberg, effective January 23, 2002.  (Stipulation No. 6(a),

Joint Pretrial Order at 4.)  The policy designated Plaintiff

Tamarin Lindenberg as the primary beneficiary who was to receive

100% of the policy proceeds upon Decedent's death.  (Stipulation

No. 6(b), id.)  The policy stated in relevant part: "THE COMPANY

WILL PAY the face amount shown in the policy specifications,

less any premium due, to the designated beneficiary upon due

proof of the Insured's death and not later than two months after

the receipt of such proof."  (Lindenberg Policy, Trial Ex. 3,

ECF No. 142.)

Plaintiff Tamarin Lindenberg and Decedent executed a

Marital Dissolution Agreement ("MDA") in 2005, and a divorce

decree was issued in 2006.  (Stipulation No. 6(d), Joint

Pretrial Order at 4; see also Trial Exs. 10, 11.)  The MDA

required that "Wife shall pay the Life Insurance premium for

Columbus and Jackson National policies for so long as she is

6

able to do so and still support the children." (Trial Ex. 10 at 7.) Additionally, the MDA required "Husband at his expense [to] maintain in full force insurance on his life having death benefits payable to the parties' children as irrevocable primary beneficiaries . . . .'" (Id. at 9.)

Decedent died on January 22, 2013. (See Certificate of Death for Thomas Arthur Lindenberg, Trial Ex. 35.) On February 6, 2013, Defendant received from Plaintiff Tamarin Lindenberg a claim for the death benefit. (See Trial Ex. 22 at 1.) The instructions on the claim form required submission of Decedent's death certificate, as well as the MDA and the divorce decree because Plaintiff was an ex-spouse. (See id. at 1-2.) On March 11, 2013, Plaintiffs' attorney sent Defendant a letter seeking expedited review of the claim and payment of the death benefit. (Trial Ex. 21.) On March 22, 2013, Defendant sent a letter in response requiring further action by Plaintiffs, including "waivers to be signed by the other potential parties"; and the obtaining of "court-appointed Guardian(s) for the Estates of the two minor children." (Trial Ex. 23.) Defendant stated that another option would be for Plaintiff Tamarin Lindenberg to waive her rights to the claim so that Defendant could disburse the proceeds to the minor children. (Id. at 2.)

Throughout the month of May 2013, Plaintiff Tamarin

Lindenberg and Defendant were in communication about how to proceed and whether Defendant would interplead the funds with the Court. (See Trial Exs. 24, 25, 32.) On July 19, 2013, Plaintiffs filed suit for breach of contract and bad faith. (ECF No. 1-1.)

On May 29, 2014, by Order of the Court, Defendant disbursed payment of $366,363.22, the face amount of the policy plus interest, to Plaintiff. (Stipulation No. 6(k), Joint Pretrial Order at 4.)

## III. STANDARDS OF REVIEW

### A.    Judgment as a Matter of Law

"In [the Sixth Circuit], a federal court sitting in diversity must apply the standard for judgments as a matter of law of the state whose substantive law governs." DXS, Inc. v. Siemens Med. Sys., Inc., 100 F.3d 462, 468 & n.4 (6th Cir. 1996) (explaining that "a motion for directed verdict is now referred to as a motion for judgment as a matter of law"); see also J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co., 936 F.2d 1474, 1482 (6th Cir. 1991) (holding that "[i]n federal court diversity cases, . . . state law governs the standard for granting motions for directed verdicts and judgments notwithstanding the verdict.")

Under Tennessee law, the reviewing court must "take the strongest legitimate view of the evidence in

favor of the opponent of the motion, allow all
reasonable inferences in his or her favor, discard all
countervailing evidence, and deny the motion where
there is any doubt as to the conclusions to be draw[n]
from the whole evidence."

Stinson v. Crye-Leike, Inc., 198 F. App'x 512, 515 (6th Cir.

2006) (alteration in original) (quoting Arms v. State Farm Fire

& Cas. Co., 731 F.2d 1245, 1248 (6th Cir. 1984)).  Judgment as a

matter of law should be granted "only if reasonable minds could

draw but one conclusion."  Sauls v. Evans, 635 S.W.2d 377, 379

(Tenn. 1982).

### B. Certification of Questions of Law to the Tennessee Supreme Court

The Tennessee Supreme Court Rules permit the Tennessee

Supreme Court to, "at its discretion, answer questions of law

certified to it by . . . a District Court of the United States

in Tennessee."  Tenn. Sup. Ct. R. 23, § 1.  The Tennessee

Supreme Court may do so "when the certifying court determines

that, in a proceeding before it, there are questions of law of

this state which will be determinative of the cause and as to

which it appears to the certifying court there is no controlling

precedent in the decisions of the Supreme Court of Tennessee."

Id.  A question of law is "determinative of the cause" if it is

claim-dispositive.  Becker v. Ford Motor Co., No.

1:13-cv-276-SKL, 2013 WL 6046080, at *2 (E.D. Tenn. Nov. 13,

2013).

The certification of questions "is most appropriate when the question is new and state law is unsettled." BKB Props., LLC v. SunTrust Bank, 453 F. App'x 582, 588 (6th Cir. 2011) (quoting Transamerica Ins. Co. v. Duro Bag Mfg. Co., 50 F.3d 370, 372 (6th Cir. 1995)). "When [the certifying court] see[s] a reasonably clear and principled course," it will forgo certification and address the issue itself. Id. (quoting Pennington v. State Farm Mut. Auto. Ins. Co., 553 F.3d 447, 450 (6th Cir. 2009)).

## IV. ANALYSIS

Defendant argues that it is entitled to judgment as a matter of law on the basis that Plaintiff did not offer a "legally sufficient evidentiary basis" for claims of statutory bad faith and punitive damages at trial. (ECF No. 158 at 1-2.) The Court addresses each of these claims in turn.

### A. Statutory Bad Faith

Defendant asserts that "Plaintiff failed to establish that each of [Defendant]'s grounds for questioning her entitlement to the Policy proceeds was unreasonable." (Id. at 1.) Plaintiff argues that "the trial was replete with evidence of [Defendant]'s inaction and indifference . . . in refusing to pay her the death benefit." (ECF No. 159 at 11.) The Court agrees with Plaintiff that the evidence of Defendant's actions during

the course of its dealings with Plaintiff involving Decedent's life insurance proceeds creates doubt as to whether Defendant acted in good faith.

The Tennessee Code provides that the statutory penalty for bad faith by an insurer refusing to pay is, "in addition to the loss and interest on the bond, a sum not exceeding twenty-five percent (25%) on the liability for the loss." Tenn. Code Ann. § 56-7-105(a). There are four elements a plaintiff must satisfy to prevail on a claim for statutory bad faith.[1] The parties dispute only whether Defendant's refusal to pay was not in good faith. (See Joint Pretrial Order at 5.) To show bad faith, a plaintiff must prove "facts that tend to show 'a willingness on the part of the insurer to gamble with the insured's money in an attempt to save its own money or any intentional disregard of the financial interests of the plaintiff in the hope of escaping full liability.'" Johnson v. Tenn. Farmers Mut. Ins. Co., 205 S.W.3d 365, 370 (Tenn. 2006) (quoting Goings v. Aetna Cas. &

---

[1] To prevail on a claim for statutory bad faith, the Plaintiff must show:

(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith.

Palmer v. Nationwide Mut. Fire Ins. Co., 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986).

Sur. Co., 491 S.W.2d 847, 849 (Tenn. Ct. App. 1972)). An insurer's duty to act in good faith is discharged when it "exercise[s] ordinary care and diligence in investigating the claim." Id.

The insurer "is entitled to rely upon available defenses and refuse payment if there [are] substantial legal grounds that the policy does not afford coverage for the alleged loss." Ginn v. Am. Heritage Life Ins. Co., 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004) (quoting Sisk v. Valley Forge Ins. Co., 640 S.W.2d 844, 852 (Tenn. Ct. App. 1982)). "The jury's verdict awarding a bad faith penalty can be set aside only if there is no material evidence to support it." Id.

In this case, Defendant asserts that it considered two bases for questioning Plaintiff's entitlement to the proceeds: "(1) the waiver provision in the martial [sic] dissolution agreement, and (2) the insurance provision of the marital dissolution agreement by which Mr. Lindenberg agreed to provide insurance coverage for his children as irrevocable beneficiaries." (ECF No. 158 at 3.) Defendant asserts that "[i]f either of these bases is valid or was asserted in good faith," then its motion for judgment as a matter of law must be granted. (Id.) The Court evaluates each of these bases as if it had been asserted independently. "[I]f an insurer asserts a

defense in good faith, the bad faith penalty may not be imposed
even if the defense is unsuccessful." Fulton Bellows, LLC v.
Fed. Ins. Co., 662 F. Supp. 2d 976, 996 (E.D. Tenn. 2009)
(quoting Sowards v. Grange Mut. Ins. Cas. Co., No. 3:07-cv-0354,
2008 WL 3164523, at *8 (M.D. Tenn. Aug. 4, 2008)); see also
State Auto. Mut. Ins. Co. v. R.H.L., Inc., No. 07-1197, 2010 WL
909073, at *16 (W.D. Tenn. Mar. 12, 2010).

### 1. Waiver Provision of the MDA

Defendant asserts that the waiver provision of the marital
dissolution agreement called into question Plaintiff's
entitlement to the proceeds.  The waiver provision, however,
states that "[e]xcept for the terms and provisions of this
Marital Dissolution Agreement, both parties waive and repudiate
all right, title, and interest . . . in and to the property and
estate of the other including . . . insurance." (Trial Ex. 10
at 2 (emphasis added).)  Defendant's reliance on the waiver
provision as a grounds for questioning who should be paid the
proceeds is not valid because the waiver provision itself stated
that it was secondary to other terms and provisions of the
agreement.  Since the agreement also contained a life insurance
provision (see id. at 9-11), the parties' waiver of rights did
not govern who Decedent's beneficiaries were in light of the
divorce.

Jennifer Trumpie, Defendant's customer relations representative, despite being a non-lawyer, concluded that it was unclear whether "the [Defendant's] policy is the policy Mr. Lindenberg was required to maintain with the children as beneficiaries." (Trial Ex. 23 at 1; see also Trial Tr. 13:3-6, Dec. 17, 2014.) Trumpie also concluded that, if Defendant's policy was not the one Decedent was required to maintain and Plaintiff Tamarin Lindenberg was indeed the designated beneficiary, then Plaintiff had waived her status as beneficiary in the MDA. (Trial Ex. 23 at 1.) Even if this had been accurate, Defendant did not then proceed with ordinary care and diligence in investigating other potential claims, particularly that of Decedent's adult daughter Mary Angela Lindenberg Williams, who was an alleged potentially adverse claimant. (Trial Tr. vol. 1, 222:17-19, Dec. 16, 2014; Trial Tr., 42:16-23, Dec. 17, 2014.) Defendant's own insurance industry opinion witness, Robert Adams, testified that it was routine to contact potentially adverse claimants during an initial claim investigation. (Trial Tr. afternoon, 424:4-11, Dec. 18, 2014.) Accordingly, the Court does not find that the only conclusion to be drawn from the evidence is that the waiver provision constituted a "substantial legal ground" for refusing payment and that Defendant acted in good faith when it believed that the

provision did.  Defendant is not entitled to judgment as a
matter of law on this basis.

### 2. Life Insurance Provision of the MDA

Defendant's other asserted basis for questioning to whom
the proceeds should be paid is the life insurance provision of
the MDA.  While Defendant does not dispute that Plaintiff was
the primary beneficiary of the policy at issue, Defendant argues
that its refusal to pay was based on the possibility of multiple
liabilities on the policy, which would have required Defendant
to pay the policy proceeds to both Plaintiff and her children.
(ECF No. 158 at 8.)  The question of whether Defendant acted in
good faith in withholding payment of the death benefit to
Plaintiff was submitted to the jury, which decided in
Plaintiff's favor.  (See Verdict Form at PageID 2016, ECF No.
151.)  Defendant argues that the jury verdict should be reversed
because the jury failed to separate a defense to the breach of
contract claim from the motivation for asserting that defense
when it considered the bad faith claim.  (ECF No. 158 at 8.)

The Court finds that the proof offered at trial does not
support Defendant's assertion that it acted in good faith when
it refused to pay Decedent's death benefit.  Plaintiff's opinion
witness, Aubrey Brown, a Tennessee family law attorney,
testified that there was no risk to Defendant of multiple

15

liabilities because Defendant was obligated to pay only the
designated primary beneficiary of the policy – Plaintiff – and
any cause of action based on the children's entitlement to the
proceeds would have been against Decedent's estate or Plaintiff,
not Defendant.  (Trial Tr., 293:21-294:6, 303:21-304:12, Dec.
17, 2014.)  Defendant did not present testimony to contradict
these assertions.  Plaintiff's former attorney, Tom Maschmayer,
also testified that although Defendant was offered a hold
harmless and indemnification agreement to further shield
Defendant from the liability it feared, Defendant's in-house
counsel, Nathan Maas, rejected the agreement.  (Id. at 229:3-
230:6.)

Defendant asserted at trial that it had specific concerns
about the children's claims and thus, required waivers of the
children's rights before paying the death benefit.  (See, e.g.,
id. at 174:6-175:1.)  Defendant's insistence on receiving
waivers from the children, however, is inconsistent with its own
actions.  First, Plaintiff testified that approximately two
months after Decedent's death, she offered to have two guardians
act on behalf of her minor children, yet Trumpie rejected the
offer.  (Trial Tr. afternoon, 232:20-233:6, Dec. 18, 2014.)
Defendant also stipulated that it had no standard company policy
pertaining to requiring guardianships and decides claims where

16

guardianships may be implicated on a case-by-case basis.
(Stipulation No. 6(i), Joint Pretrial Order at 4.) Second, in
October 2013, after Plaintiff filed suit, Defendant agreed to
the appointment of the same guardians it had rejected
approximately seven months earlier and filed a joint motion with
Plaintiff to appoint the guardians in December 2013. (Trial Tr.
afternoon, 233:9-17, Dec. 18, 2014; Joint Mot. to Appoint James
and Kimberly Griffith As Guardians Ad Litem, Trial Ex. 13.)
Third, Defendant was willing to pay Decedent's adult daughter
part of the death benefit even though she had not asserted a
claim to it. (See Trial Ex. 23 at 2 (indicating that Defendant
would pay "contingent beneficiaries [who] are 'Surviving
Children Equally'" if Plaintiff waived her rights).) These
actions suggest that Defendant's concern about multiple
liabilities and the children's interests, which it asserts
justified its refusal to pay, was pretextual.

There is further evidence that Defendant acted in bad faith
because it did not exercise ordinary care and diligence in
handling Plaintiff's claim. Defendant stipulated "that there
were not a manager in its claims department that was
specifically tasked with managing and overseeing the day-to-day
activities of [Plaintiff's] claim." (Stipulation No. 6(j),
Joint Pretrial Order at 4.) Plaintiff's file was closed on the

same day Trumpie wrote a letter to Plaintiff explaining why
Defendant was refusing to pay the death benefit.  (Trial Tr.
vol. 1, 298:4-6, Dec. 16, 2014.)  Plaintiff's claim was then
handled by Maas who never sent the waivers requested by
Plaintiff and her counsel (Trial Tr., 95:1-4, Dec. 17, 2014);
and was out of the office on work days between February and
August 2013 because of his ongoing personal bankruptcy case
(id. at 112:1-5; see generally id. at 95-100).

In addition, Plaintiff presented evidence at trial that
Defendant intentionally ignored Plaintiff's interests to avoid
full liability.  Over the course of Plaintiff's phone calls to
Defendant in February and March 2013, Defendant was made aware
of Plaintiff's limited finances (see, e.g., Trial Tr. afternoon,
206:20-22, Dec. 18, 2014; Trial Tr. 61:23-25, Dec. 22, 2014; see
generally Trial Ex. 38), yet still required her to engage in the
guardianship process detailed in the letter to Plaintiff before
it would pay proceeds to her (Trial Ex. 23; see also Trial Tr.
54:13-21, Dec. 22, 2014; Trial Exs. 25, 26, 32).  Scott
Peatross, a probate attorney and the public administrator of
Shelby County, was called by Defendant and testified that the
process would have likely entailed hiring two attorneys, one to
file a petition in court to establish guardianships for the
minor children, and another to serve as guardian.  (Trial Tr.

vol. 1, 22:15-23:7, Dec. 19, 2014.)  Trumpie and Maas admitted,
however, that no contract terms required Plaintiff to take such
action (Trial Tr., 54:13-18, 188:24-189:3, Dec. 17, 2014; ), and
Maschmeyer and Brown testified that the process would not have
been viable anyway as a mechanism for Plaintiff to receive the
death benefit (Trial Tr., 232:7-13, 305:10-308:2, Dec. 17,
2014).  Although the significant cost to a plaintiff is not
alone grounds for a finding of bad faith, Sisk, 640 S.W.2d at
852, requiring Plaintiff to participate in an unnecessary
process while having knowledge of the financial burden on her
demonstrates Defendant's intentional disregard of Plaintiff's
interests and, therefore, its bad faith in refusing to pay.

    Accordingly, the Court does not find that the only
conclusion to be drawn from the evidence is that the life
insurance provision constituted a "substantial legal ground" for
refusing payment and that Defendant acted in good faith when it
believed that the provision did.  Defendant is not entitled to
judgment as a matter of law on this basis.

    As there is doubt as to Defendant's conclusion that it
acted in good faith in light of the waiver and life insurance
provisions of the MDA, the Court DENIES Defendant's motion for
judgment as a matter of law with regards to the statutory bad
faith  claim.

**B.   Damages**

Defendant also seeks judgment as a matter of law on the issue of punitive damages.  Defendant asserts that Plaintiff cannot recover the $3,000,000 in punitive damages awarded by the jury because Plaintiff failed to prove actual damages.  (ECF No. 158 at 10-14; see Special Verdict Form, ECF No. 152.)  In the alternative, Defendant argues that the Tennessee punitive damages cap applies in this case and would entitle Plaintiff a maximum of $500,000.  (ECF No. 158 at 15-19.)  Plaintiff argues that actual damages were proven; the punitive damages award is not subject to the statutory cap; and even if the cap were applicable and constitutional, Plaintiff would be entitled to $700,000.  (ECF No. 159 at 2-6, 20 & n.11.)  Plaintiff also seeks to certify questions of law to the Tennessee Supreme Court regarding the constitutionality of the statutory damages cap. (See ECF No. 167.)

It is undisputed that actual damages must first be established before punitive damages can be awarded.  (See ECF No. 158 at 11; ECF No. 159 at 4.)  The Court addresses the actual damages and punitive damages questions in turn.

**1.   Actual Damages**

Defendant argues that no actual damages arise from Plaintiff's breach of contract claim because Defendant paid the

death benefit "in full prior to trial." (ECF No. 158 at 13.)
Plaintiff argues that the damages must be measured at time of
breach, not time of trial. (ECF No. 159 at 3.) The Court finds
that damages are measured at time of breach and that the
predicate of actual damages in this case satisfies the initial
requirement for punitive damages.

"The purpose of assessing damages in breach of contract
cases is to place the plaintiff as nearly as possible in the
same position she would have been in had the contract been
performed . . . ." BVT Lebanon Shopping Ctr., Ltd. v. Wal-Mart
Stores, Inc., 48 S.W.3d 132, 136 (Tenn. 2001) (quoting Lamons v.
Chamberlain, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1993)). In
Tennessee, "[t]he recovery in an action at law for the breach of
the contract in failing to deliver the policy, would be its
money value at the time of breach, with interest, if the jury
see proper to give interest." Nashville Life Ins. Co. v.
Mathews, 76 Tenn. 499, 507 (1881) (emphasis added); see also
BancorpSouth Bank, Inc. v. Hatchel, 223 S.W.3d 223, 231 (Tenn.
Ct. App. 2006) (holding that damages for breach of contract for
real estate depend on value at the time of breach); First Tenn.
Bank Nat. Ass'n v. Hurd Lock & Mfg. Co., 816 S.W.2d 38, 42
(Tenn. Ct. App. 1991) (recognizing principle of measuring
damages at time of breach of contract for goods). Other

21

circuits applying other states' laws have also held that "contract damages are measured at the time of breach." <u>Merrill Lynch & Co. v. Allegheny Energy, Inc.</u>, 500 F.3d 171, 185 (2d Cir. 2007); <u>Gen. Universal Sys., Inc. v. Lee</u>, 379 F.3d 131, 154 (5th Cir. 2004).

The case law Defendant cites to assert that damages are measured at the time of trial is unpersuasive. While the Supreme Court of Tennessee held in <u>Whittington v. Grand Valley Lakes, Inc.</u> that the respondent had already compensated the petitioner for losses stemming from the respondent's trespass, thereby eliminating the petitioner's actual damages, the court still found that there was a predicate of actual damages that supported an award for punitive damages. 547 S.W.2d 241, 242-43 (Tenn. 1977). Indeed, the court negated the jury verdict for actual damages but upheld the jury verdict for punitive damages. <u>Id.</u> The court reasoned that the

> [respondent] recognized its liability and pre-paid it
> . . . . Surely, had [the respondent] not [done so] and
> the landowner had restored [the land] at her own
> expense, there would be a predicate of actual damages
> and an award of punitive damages would be soundly
> based. In legal effect, we see no difference.

<u>Id.</u> at 243.

In this case, had Defendant not paid Plaintiff the death benefit before trial – which it did only after the Court ordered it to do so (<u>see</u> Stipulation No. 6(k), Joint Pretrial Order at

22

4) – the benefit would have been the predicate of actual damages Plaintiff sought, and Plaintiff would be entitled to punitive damages.  Should Defendant succeed on this issue, Plaintiff would be placed in a worse position simply because Defendant ultimately acquiesced to the Court's order after over a year of delaying its payment obligation.

Although Defendant uses _Whittington_ to support its argument that actual damages should be calculated at the time of trial, Defendant must also distinguish the instant matter from _Whittington_ on the issue of allowing punitive damages in light of complete compensation to a plaintiff before trial.  Defendant argues that the defendant in _Whittington_ did not have a valid defense for its tortious acts while Defendant in this case acted in good faith when questioning to whom the proceeds should be paid.  (ECF No. 158 at 13-14.)  Defendant also argues that _Whittington_ is a case that predates statutory punitive damages caps in Tennessee and only involved a small amount of damages. (_Id._ at 14.)  Plaintiff argues that _Whittington_ is still binding: "[Defendant's] arguments . . . [render] the doctrines of stare decisis and nominal damages . . . nullities." (ECF No. 159 at 5 n.3.)  The Court first disagrees that Defendant has a valid defense for its refusal to pay the death benefit, _see_ _supra_ Part IV.A, and also disagrees that _Whittington_ is no

longer good law.  Defendant cannot logically use the case to
support one of its assertions and then reject the same case as
irrelevant in light of statutory changes.

Defendant relies additionally on <u>Custom Built Homes v. G.S.
Hinsen Co.</u>, a case in which the defendant's breach of contract
did not cause the plaintiff actual injury because a third-party
had already satisfied its contract with the plaintiff, making
the plaintiff whole and ineligible for actual damages.  (ECF No.
158 at 12-13 (citing No. 01A01-9511-CV-00513, 1998 WL 960287
(Tenn. Ct. App. Feb. 6, 1998)).)  The Court agrees with
Plaintiff that this case is merely persuasive and not
precedential, and also that it is distinguishable from the
instant matter because Plaintiff was not made whole by a
third-party before trial in spite of Defendant's breach.  (<u>See</u>
ECF No. 159 at 5.)  Although Defendant argues that Plaintiff has
been made whole because it has paid Plaintiff the value of the
contract plus interest, the Court does not find Plaintiff
ineligible for actual damages.  To hold that a defendant may
escape punitive damages liability for a breach of contract as
long as it performs wholly before trial not only goes against
the rule of measuring damages at the time of breach but would
also contravene the deterrent and retributory effect of punitive
damages.  Since the Court finds that Plaintiff's actual damages

24

are calculated at the time of breach, and thus, the then-unpaid proceeds of the life insurance policy were the actual damages, Plaintiff is eligible for punitive damages.

## 2. Punitive Damages

Defendant argues that punitive damages are inappropriate because (1) Plaintiff failed to prove statutory bad faith at trial; (2) Plaintiff failed to establish Defendant acted intentionally, fraudulently, maliciously or recklessly; and (3) Plaintiff did not suffer actual damages from breach of contract. (ECF No. 158 at 15.) The Court is not persuaded by Defendant's arguments and finds that Plaintiff is entitled to punitive damages.

First, the Court finds that Plaintiff sufficiently proved the elements of statutory bad faith at trial. See supra Part IV.A. Second, the Court finds that while Plaintiff did not establish at trial that Defendant acted fraudulently, Plaintiff did establish at trial that Defendant acted at least recklessly when it failed to pay the death benefit to Plaintiff.

> A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature

that its disregard constitutes a gross deviation from the [ordinary] standard of care . . . .

Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992) (citation omitted).  To succeed on a claim for fraud, Plaintiff must prove fraud with particularity.  Fed. R. Civ. P. 9(b).

Plaintiff did not properly plead fraud at trial, and even if she had done so, she failed to present evidence at trial that Defendant intentionally made misrepresentations to Plaintiff in order to mislead her and benefit itself.  Plaintiff, however, established recklessness on the part of Defendant: Plaintiff presented evidence that Defendant was aware of Plaintiff's financial situation, yet consciously disregarded it by inadequately investigating her claim and requiring her to undertake unnecessary actions like the appointment of guardians for her minor children before paying out the proceeds.  See supra Part IV.A.2.  Third, there exists a predicate for actual damages, which enables Plaintiff to recover punitive damages.  See supra Part IV.B.1.  For these reasons, the Court DENIES Defendant's motion for judgment as a matter of law with regards to the punitive damages claim.

### 3.  Tennessee Statutory Damages Cap

The Court defers ruling on the amount of punitive damages to which Plaintiff is entitled because there is an outstanding issue of whether the Tennessee statutory damages cap is

constitutional. Plaintiff submits that the Court should certify

two questions of law to the Tennessee Supreme Court:

> (1) Do the punitive damages caps in civil cases
> imposed by Tennessee Code Annotated § 29-39-104[2]
> violate a plaintiff's right to a trial by jury, as
> guaranteed in Article I, section 6 of the Tennessee
> Constitution?

> (2) Do the punitive damages caps in civil cases
> imposed by Tennessee Code Annotated § 29-39-104
> represent an impermissible encroachment by the
> legislature on the powers vested exclusively in the
> judiciary, thereby violating the separation of powers
> provisions of the Tennessee Constitution?

(ECF No. 167 at 2.)

The certification of these questions is appropriate at this

stage because they are determinative of the cause and because

there are no Tennessee Supreme Court decisions that control.

See Tenn. Sup. Ct. R. 23, § 1. Both Defendant and the State of

Tennessee opposed Plaintiff's Motion to Certify Questions

because it was not yet clear whether the punitive damages cap

would need to be applied. See ECF No. 174 at 4-6; ECF No. 178

at 4. Now that the Court has decided that punitive damages are

warranted, see supra Part IV.B.2, the issue is ripe for

certification. The State acknowledges that "[n]either the

Tennessee Supreme Court nor any other court in Tennessee has

---

[2] Section 29-39-104 of the Tennessee Code imposes a cap on punitive damages: they "shall not exceed an amount equal to the greater of: (A) Two (2) times the total amount of compensatory damages awarded; or (B) Five hundred thousand dollars ($500,000)." Tenn. Code Ann. § 29-39-104(a)(5).

ruled on the constitutionality of" the statutory damages cap.[3]
(ECF No. 178 at 5.)  Thus, the questions are new and state law
on the particular statute at issue is unsettled.  "The
constitutional questions are significant and will ultimately
need to be decided by the Tennessee Supreme Court."  (Id.)

The Court is unpersuaded by Defendant's argument that
certification is not warranted because there is a "'clear and
principled' course" for the Court to follow.  (ECF No. 174 at 6
(quoting Pennington, 553 F.3d at 450).)  For example, Defendant
analogizes to a North Carolina Supreme Court case that supports
the constitutionality of a cap on punitive damages.  (Id. at
10-12 (citing Rhyne v. K-Mart Corp., 594 S.E. 2d 1 (N.C.
2004)).)  The North Carolina Supreme Court held that the state's
statutory punitive damages cap did not violate the state
constitutional right to a jury trial "because plaintiffs lacked
a fundamental right to a judgment that was consistent with the
jury's punitive award."  (Id. at 12.)  Plaintiff points to
rulings from the Missouri and Ohio Supreme Courts, however,
which have held that statutory punitive damages caps do violate

---

[3] Plaintiff cites a Tennessee trial court opinion, Clark v. Cain, in
which the Hamilton County Circuit Court held that the statutory cap on
non-economic damages is unconstitutional.  (ECF No. 168 at 3 (citing No.
12-C1147 (Cir. Ct. Hamilton Cnty. Mar. 9, 2015) (mem. op.), ECF No. 168-1).)
Clark, however, addresses the statutory cap under section 29-39-102 of the
Tennessee Code, not the section at issue in this case, section 29-39-104.
(See Clark, No. 12-C1147, at 2.)

a plaintiff's fundamental right to a jury trial. (ECF No. 168 at 6 (citing <u>Lewellen v. Franklin</u>, 441 S.W.3d 136, 143 (Mo. 2014) (en banc); <u>State ex rel. Ohio Acad. of Trial Lawyers v. Sheward</u>, 715 N.E.2d 1062, 1091 (Ohio 1999) ("a statute that allows the jury to determine the amount of punitive damages to be awarded but denies the litigant the benefit of that determination stands on no better constitutional footing than one that precludes the jury from making the determination in the first instance")).) It does not appear, then, that there is a clear and principled course for the Court to follow in rejecting Plaintiff's constitutional challenges that would justify a denial of certification to the Tennessee Supreme Court.

Accordingly, the Court GRANTS Plaintiff's Motion for Certification of Questions to the Tennessee Supreme Court.

V.    **CONCLUSION**

The Court applies the standard for granting motions for judgment as a matter of law under Tennessee law and finds that, taking the evidence in the strongest view in favor of Plaintiff, the non-movant, there is doubt as to the conclusions drawn by Defendant. Thus, Defendant's Motion for Judgment as a Matter of Law is DENIED. The Court also finds that the constitutionality of the Tennessee statutory damages cap is an issue now ripe and appropriate for review and GRANTS Plaintiff's motion to certify

29

questions regarding the constitutionality of the cap to the Tennessee Supreme Court.  The Court will enter a separate order of certification.

**IT IS SO ORDERED,** this 24th day of November, 2015.


/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE